## GULF PRODUCTION CO. v. CRUSE.
### (No. 650—4157.)

(Commission of Appeals of Texas, Section A. May 6, 1925.)

**1. Mines and minerals ⬡77—Lease held subject to rule that courts look with disfavor upon forfeitures.**

Where a lease did not contain provision for development of the premises for oil and gas purposes, it was governed as respected forfeiture for nonpayment of taxes by lessee by general rule that forfeitures are looked upon with disfavor by the courts.

**2. Contracts ⬡318—Party claiming benefit of forfeiture clause must clearly show breach of contract in particular manner providing for forfeiture.**

Party to contract claiming benefit of forfeiture clause must show clearly breach of contract by other party in particular manner providing for forfeiture.

**3. Contracts ⬡167—Customs and usages ⬡13—Court will presume parties contracted with general customs, practices, and laws in mind, in absence of clear contrary intent in contract.**

Court will presume that parties contracted with general customs, practices, and laws affecting the subject of the contract in mind, in absence of a clear contrary intent in contract.

**4. Contracts ⬡147(1)—Object of court in construing contract is to ascertain intention of contracting parties.**

Object of court in construing contract is to ascertain intention of contracting parties.

**5. Mines and minerals ⬡77—Forfeiture clause in oil and gas lease pertaining to nonpayment of taxes construed.**

Under oil and gas lease providing that under penalty of forfeiture of rights granted, lessee agreed to pay taxes; that, should lessee fail to pay, lessor should call lessee's attention to its default by written notice, and that no forfeiture should be declared until lessee failed to pay taxes within 30 days after receipt of written notice, *held*, that until expiration of time provided by law for payment of taxes, lessee was not in default, and notice of default could not be given.

**6. Mines and minerals ⬡77—Lessor's letters to lessee as to nonpayment of taxes, antedating default, held not notice of default.**

Lessor's letters to lessee as to nonpayment of taxes, antedating expiration of time for payment, *held* not notice of default, within forfeiture clause in oil and gas lease.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by W. W. Cruse against the Gulf Production Company. Judgment for plaintiff was affirmed by the Court of Civil Appeals (258 S. W. 211), and defendant brings error. Reversed and rendered.

David Proctor, of Houston, for plaintiff in error.

E. M. Chester, of Beaumont, for defendant in error.

CHAPMAN, J. The Gulf Production Company, on May 16, 1916, secured an oil and gas lease from W. W. Cruse on 125 acres of land in Hardin county for a consideration of $2,962.50. The lease provided that the company should be under no obligation to drill any well or wells on the land at any time within the 10-year period that the lease was to run, except necessary offset wells. The lease contains the following forfeiture provision: ·

"Sixth. Under penalty of forfeiture of the rights hereby granted, the company agrees to pay the taxes on the property above described for the present year and those accruing hereafter, annually as the same become due and payable, unless and until it exercises the right of surrender given it in paragraph tenth hereof; provided, however, that should the company fail to so pay said taxes, the said first party shall call the company's attention to its default by written notice, and no forfeiture shall be declared by the first party unless and until the company fails to pay said taxes within thirty (30) days after its receipt of said written notice."

On October 26, 1916, Cruse wrote the company that the taxes on the lease for the year 1916 was $21.50, and that he usually paid his taxes about the middle of January. December 27, 1916, Cruse again wrote the company that he had already written them in regard to the 1916 taxes, and again stated the amount of taxes due, and further stated that penalty would attach after January 31, 1917. The taxes were not paid by the company but were paid by Cruse on January 31, 1917. On March 31, 1917, Cruse in answer to a letter from the company notified the company that they had defaulted in making payment of the taxes, and that he had paid the taxes at the last moment that they could be paid, and that he was claiming a forfeiture of the contract. The company tendered the amount of the taxes to Cruse April 17th. These letters are all set out in full in the opinion by the Court of Civil Appeals (258 S. W. 211). Cruse brought suit for a forfeiture of the lease contract on account of the failure of the company to pay the taxes in the manner provided, and both the trial court and the Court of Civil Appeals found in his favor. The action of those courts is now before us for review.

[1, 2] As the lease did not carry a provision for development of the leased premises for oil and gas purposes, then the contract would be governed by the general rule of law that forfeitures are looked upon with disfavor by the courts, and that the party to a contract claiming the benefit of a forfeiture clause must clearly show that the contract

⬡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

                              (271 S.W.)

has been breached by the other party in the particular manner providing for a forfeiture.

[3] It is well settled that in construing contracts the courts will take into consideration general customs and practices, as well as the law affecting the matters contracted about, and will presume that the parties contracted with such customs, practices, and laws in mind, unless the contrary clearly appears from the terms of the contract.

[4] When judicial construction of a contract becomes necessary, the object of the court is to ascertain the intention of the contracting parties.

[5] With these general principles in mind we will undertake to discuss the clause of the contract under consideration.

In our opinion this clause was not intended by the parties to mean that the taxes should be paid on the first of October of each year, as intimated by the Court of Civil Appeals, but, in view of the fact that they knew taxes were payable at any time before February 1st of each year and that a very small per cent. of taxes are paid during the first months that taxes are payable, and considering the letter of Cruse of October 26, notifying the company that he usually paid his taxes about the middle of January, and his letter of December 27, stating that penalty would attach after January 31, 1917, we think that they intended to agree that the Oil Company would, between October 1 and February 1 of each year, pay the taxes for that year. Under the facts and conditions already enumerated, it seems to us that the portion of the clause reading as follows: "Provided, however, that should the company fail to so pay said taxes, the said first party shall call the company's attention to its default by written notice, etc.," could mean nothing else than that, should the company fail to pay the taxes within the time provided by law, that is, before February 1, that it would be held in default of payment of the taxes, and that the contract would be subject to forfeiture after 30 days' notice of such default, and notice of default could not be given until default was made.

[6] The letters of October 26th and December 27th could not be considered as notice of default, because the company could not have been in default until after those dates. The letter of Cruse of March 31 is the first notice given by him to the company of default, after the company was guilty of default, and the company tendered him the amount of the taxes within 30 days after that notice. If the company had paid the taxes any time before they were paid by Cruse on January 31, it would, as we construe it, be fulfilling every condition of the contract as to the payment of the taxes, regardless of how many notices it had received from Cruse.

We recommend that the judgment of the district court and Court of Civil Appeals be reversed, and that judgment be here rendered for plaintiff in error.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals are both reversed, and judgment rendered in favor of the plaintiff in error, as recommended by the Commission of Appeals.