## DEACE v. STRIBLING.
### No. 8950.

Court of Civil Appeals of Texas. Austin.
July 24, 1940.

Robert C. Eckhardt and Creekmore Fath, both of Austin, for appellant.

A. G. Mueller and Bill S. Watkins, both of Llano, for appellee.

BLAIR, Justice.

Appellee, W. F. Stribling, sued appellant, R. A. Deace, to cancel a mineral lease because of alleged breaches of its covenants and conditions; and on the trial to

the court without a jury judgment was rendered for appellee as prayed; hence this appeal.

Appellee was lessor, and appellant, R. A. Deace, and W. P. Bankston, Clifford F. York, and Patsey L. York were lessees; each lessee owning a certain percentage of interest in the entire mineral estate granted. In 1938, all of the lessees, except appellant, executed a quitclaim deed to their interests to appellee. In 1936, W. P. Bankston executed a quitclaim deed to his interest in the lease to appellant, and after this suit was filed the other lessees named executed a quitclaim deed to their interests in the lease to appellant; and by way of answer and cross-action he alleged that the quitclaim deed to appellee was procured by fraud, and that he was the sole owner of the lease, and prayed that appellee be enjoined from interfering with his rights as lessee, and for damages.

Appellant contends that the trial court was without jurisdiction because the lessees who quitclaimed their interest to appellee were not made parties to the suit. In the first place, it is contended that the interest of Patsey L. York, a married woman, did not pass to appellee because her acknowledgment to her quitclaim deed to him was defective; the portion complained of being as follows: "Before me, the undersigned authority, on this day personally appeared Patsey L. York, wife of E. G. Klein and daughter of Clifford L. York, known to me to be the person whose name is subscribed to the foregoing instrument, and the said ——— acknowledged to me that she executed the same for the purposes and considerations therein expressed. And the said Patsey L. York, wife of the said E. H. Klein, having been examined by me privily and apart from her husband, and having the same fully explained to her, she the said Myrtle L. York, acknowledged such instrument to be her act and deed, and declared that she had willingly signed the same for the purposes and consideration therein expressed, and that she did not wish to retract it."

■ The failure of the notary to fill in the blank space with the name Patsey L. York is not a material defect. The acknowledgment as a whole clearly shows that the notary was taking the acknowledgment of Patsey L. York, and the omission of her name in the blank space is only a clerical error, which does not affect its sufficiency. Talbert v. Dull, 70 Tex. 675, 8 S.W. 530; Gray v. Kauffman, 82 Tex. 65, 17 S.W. 513.

■ Nor does the obvious mistake of inserting the name Myrtle L. York in the last sentence of the acknowledgment vitiate it, because it is clear from the whole instrument that the name intended was Patsey L. York. The insertion of any name at that place in the acknowledgment is surplusage, and if stricken out, the acknowledgment is clearly that of Patsey L. York. Durst v. Daugherty, 81 Tex. 650, 17 S.W. 388; Cheek v. Herndon, 82 Tex. 146, 17 S.W. 763; Gray v. Kauffman, supra.

■ In the second place, appellant contends that the quitclaim of the interests of all lessees except himself to appellee was procured by fraud. There was no proof of this allegation, and the question went out of the case. These findings and conclusions left only appellant and appellee as the lessor and lessee in the lease sought to be cancelled; and in consequence the court had jurisdiction of all parties interested in the subject matter of the suit. 32 Texas Juris 15, § 9, and cases there cited.

■ We have reached the conclusion, however, that the trial court erred in refusing to sustain the plea in abatement and general demurrer of appellant to the petition of appellee, because the lease contract created a mineral estate in the land described upon the happening of certain conditions subsequent; and the petition did not allege the giving of thirty days' notice as required in the lease for its termination for breach of any condition subsequent; and the undisputed proof showed that such notice had been given only twenty-five days at the time this suit was filed to cancel and terminate the lease. The material portions of the lease contract, except for convenience we number the paragraphs, read as follows:

First. "That said parties of the first part . . . Do, by these presents, lease, let and demise unto the said parties of the second part for the purpose of prospecting for, mining, removing and marketing, all minerals and metals and non-metalic minerals of every kind except gas and oil; just as long as paying ores can be found on or under the following described tract or parcel of land, to-wit:"

\* \* \* \* \* \*

Second. "The terms of this lease and the estate herein granted shall begin on

this date and continue until same is terminated under the provisions hereof:"

Third. "It is agreed by the parties hereto that said parties of the second part shall have three months time from this date, and shall have full rights of ingress and egress, at all times for himself, his representatives, partners and employees upon all of the said premises; for the purpose of prospecting for, locating and selecting locations for opening and working mines and taking therefrom any minerals, metals, or non-metalic minerals excepting gas and oil for the purpose of marketing same, and also for making assay tests on same."

Fourth. "The parties of the second part herein agree, in case minerals or metals are found on said leased premises, within the above named period, in sufficient quantities and richness so that same can be mined at a profit; to within six months from said months period above named, to open up such mine shafts, open out quarries, etc., as may be necessary to exploit and develop any ore veins or ore deposits on said premises, of said minerals or metals thereon and to place on said premises, such machinery, tools and appliances, as the character of the ore, in the opinion of the said second parties, may warrant, and to work said mines on said premises except from delays caused by unfavorable weather, accidents, disastrous explosions, strikes, fires or other causes beyond the control of parties of the second part."

Fifth. "Upon the wilful failure of the parties of the second part to fulfil or comply with any, or all, of the conditions and stipulations hereby imposed upon them or the terms thereof, then 30 days after written notice of such willful breach on the part of the parties of the second part, having been given them by parties of the first part; then if said willful breach continues. the tenure of this lease shall, at the option of said parties of the first part, expire and terminate."

The lease contract was incorporated and made a part of appellee's petition, which did not allege the giving of written notice to cancel or terminate the lease thirty days prior to the filing of the suit, and, as stated, the proof showed such notice to have been given for only twenty-five days at the time this suit was filed. We interpret the lease as requiring the giving of thirty days' notice as a prerequisite to the prosecution of this suit to cancel it for breach of its conditions, relied upon by appellee, which were sufficiently alleged.

The trial court found that appellant did nothing to comply with the terms of the lease after he was served with the written notice on September 23, 1938, until November 23, 1938, when he was enjoined from doing any further work on the lease; and appellee seems to contend that since appellant did nothing during such sixty-day period, the trial court's judgment should be affirmed.

This contention is untenable, because this suit was filed twenty-five days after the written notice was given, and manifestly the lessee was not required to spend any substantial sums of money to retain his estate after this suit had been filed to cancel the lease. The authorities hold that the prerequisite of notice to forfeit contained in a lease must be literally complied with. Gulf Production Co. v. Cruse, Tex.Com.App., 271 S.W. 886.

Appellee further contends that appellant breached the special limitations contained in the third paragraph of the lease contract giving lessee three months to prospect for minerals, to select locations, etc., and to which special limitations the thirty-day written notice provision has no application.

■ In this connection, the trial court found that appellant had complied with the provisions of this paragraph with respect to prospecting, but that he "did not find minerals or metals in quantities and richness so that same could be mined at a profit." This quoted finding is not material under the interpretation we give to this paragraph, as well as to the whole lease contract. The third paragraph simply permitted appellant to commence prospecting within three months, to select locations for opening and working the mine or mines, and to make assay tests. There is nothing in the language to indicate that the parties intended that lessee should be required to actually discover minerals in paying quantities within the three-month period for prospecting and making ready for the opening and working of the mine or mines. We interpret the entire contract to require the "wilful failure of the parties of the second part to fulfil or comply with any, or all, of the conditions and stipulations hereby imposed upon them" as ground for forfeiture, to apply to any and all conditions required of appellant, whether they were to have been performed

within the three-month or six-month period with reference to preliminary work in discovering and preparing to open and operate the mine or mines, or to thereafter prosecute the mining project with reasonable diligence.

■ It is also apparent from the fifth paragraph that the thirty-day written notice period was intended to apply to all conditions and stipulations required of appellant, because it specifically provides that if the "wilful failure * * * to fulfil or comply with any, or all, of the conditions and stipulations" of the lease contract shall continue after thirty days' written notice, then lessor may at his option terminate the lease. This is also true because the contract is a unit and shows that the intention of the parties was to lease the premises for the purpose of executing and carrying out the mining project; they stipulated for the reasonable and diligent execution of the contract by appellant, and then provided that if appellant wilfully failed to carry out the contract and its stipulations after thirty days' written notice of such wilful breach on the part of appellant, appellee would have the right to terminate the contract.

■ While the trial court found that no substantial work was done by appellant for a period of about one year immediately preceding the filing of this suit, there was no finding that the work had completely ceased; and in fact the uncontradicted evidence showed that appellant had remained in possession of the premises and had been doing some work during the entire period. Under such facts and circumstances, there was no complete abandonment of the premises which some authorities hold authorizes the forfeiture of the lease without notice; and the only ground for forfeiture of the lease contract was whether appellant had exercised under the facts and circumstances reasonable diligence in prosecuting the mining project; or whether he was guilty of "wilful failure to fulfil or comply with any, or all, of the conditions or stipulations" within thirty days after written notice. Texas Company v. Davis, 113 Tex. 321, 254 S.W. 304, 255 S.W. 601; Stephenson v. Calliham, Tex. Civ.App., 289 S.W. 158; Gulf Production Co. v. Cruse, supra. Obviously, the parties intended that thirty days' written notice was a prerequisite to the right of lessor to forfeit or terminate the lease contract. In consequence, appellee could not file or prosecute this suit before the expiration of the thirty-day written notice period.

Having held that the lease contract could be terminated or forfeited only for a wilful failure on the part of appellant to fulfil or comply with any or all of the conditions stipulated, after thirty days' written notice of such wilful breach or failure, which thirty days had not expired when this suit was filed, the judgment of the trial court must be reversed and the cause dismissed, without prejudice, however, to the right of appellee to give the written notice required by the lease contract, and to proceed to terminate or forfeit the lease contract if the breach or failure of appellant to comply continues after the expiration of the thirty days' written notice period.

The judgment of the trial court is reversed, and the suit is dismissed.

Reversed, and suit dismissed.